In re ELECTRONIC METAL PRODUCTS, INC., a/k/a Advanced Machining Co., Debtor.

ELECTRONIC METAL PRODUCTS, INC., a/k/a Advanced Machining Co., Plaintiff–Appellant,

v.

Howard BITTMAN, Defendant–Appellee.

No. 89–1354.

United States Court of Appeals, Tenth Circuit.

Oct. 19, 1990.

Rehearing Denied Dec. 21, 1990.

---

Ronald G. Rossi, Paul T. Maricle, Ceri A.F. Churchill of Rossi & Judd, P.C., Denver, Colo., for plaintiff-appellant.

Howard Bittman, pro se.

Before TACHA and EBEL, Circuit Judges, and JOHNSON,* District Judge.

PER CURIAM.

The issue on appeal in this case is whether an attorney's agreement to continue working on a litigation matter in exchange for periodic payments against antecedent bills owing by the client constitutes "new value" and is thus excepted from avoidance of the payments as a preference in the client's subsequent bankruptcy. The bankruptcy court ordered summary judgment in favor of Electronic Metal Products, Inc. (EMP), the client and debtor-in-possession, against Howard Bittman, the attorney, for the recovery of two payments totalling $5,100 paid to Bittman during the ninety-day prefiling preference period. The district court reversed, holding that the payments did constitute new value because the estate realized a direct net financial benefit from Bittman's continued representation and because the payments of $5,100 released Bittman's attorney's charging lien on the settlement proceeds as to $5,100 of such lien. Debtor-in-possession EMP appealed,[1] and we reverse.

The underlying facts of this case are stipulated. *See* R.Vol. I, tab 11.

In 1985, Bittman, an attorney, was retained by Electronic Metal Products (EMP), the debtor, to bring a suit for damages against Fluor Engineers, Inc. Bittman filed the action, conducted discovery and pre-trial proceedings. On December 19, 1986, Bittman sent EMP a letter requesting payment of past due fees and expenses. The president of EMP called Bittman and asked what he would require to continue working on the case. Bittman said that he would seek to

---

\* Honorable Alan B. Johnson, District Judge, United States District Court for the District of Wyoming, sitting by designation.

1. In response to the parties' Stipulated Motion for Submission on the Briefs and Waiver of Oral Argument, the court has examined the briefs and appellate record, and has determined that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App. P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

withdraw from the Fluor case and other pending litigation unless EMP paid him at least $2,000 per month on the past due bill. Between February 10, 1987 and May 6, 1987, Bittman received $5,100, representing payments on bills from June, August and September, 1986. EMP filed a petition under Chapter 11 on May 6, 1987. On August 29, 1987, the bankruptcy judge entered an order approving Bittman's continued employment pursuant to a written fee agreement with EMP as debtor-in-possession. Bittman continued working on the case. On October 6, 1987, the Fluor litigation settled by Fluor's payment of $42,000 to EMP. Bittman's compensation for work performed after the $5,100 payment is not at issue.

*Electric Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.),* No. 88–M–1377, Memorandum Opinion and Order at 1–2 (D.Colo. November 7, 1980) (hereafter "District Court Opinion and Order"). It was further stipulated by the parties that

[1] The Transfers were to a creditor, Howard Bittman.

[2] The Transfers were made while the Debtor was insolvent.

[3] The Transfers were made on or within 90 days before the date of the filing of [EMP's] Petition in Bankruptcy. . . .

[4] If this Court finds that the Transfers were not contemporaneous exchanges of value, that Bittman did not give new value for those Transfers, and that Bittman did not have a perfected attorneys' lien in the Transfers, then the parties stipulate that the Transfer enabled the creditor, Bittman, to receive more than Bittman would receive if the case were a case under Chapter 7 of this Title.

[5] Neither Transfer was made in the ordinary course of business or financial affairs of the Debtor or the Transferee.

R. Vol. I, tab 11 at 3. These stipulations satisfy the elements for preferential transfer under 11 U.S.C. § 547(b) (1988),[2] contingent on whether the transfers were contemporaneous exchanges of value, whether Bittman gave new value for the transfers, and whether Bittman had a perfected attorney's lien on the transfers. These are questions of law which we review *de novo. Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1536 (10th Cir.1990).

■■■ "The validity and extent of an attorney's lien in bankruptcy is determined by state law." *In re Life Imaging Corp.,* 31 B.R. 101, 102 (Bankr.D.Colo.1983). In Colorado, attorney's liens are governed by Colo.Rev.Stat. § 12–5–119 (1985 Repl.Vol. & Cum.Supp.1989).[3]

2. 11 U.S.C. § 547(b) provides:
   Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if *such creditor at the time of such transfer was* an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(a)(2) defines new value:
   "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

3. Colo. Rev.Stat.Ann. § 12–5–119 provides:
   All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his

Colorado law distinguishes between retaining liens and charging liens. *See Collins v. Thuringer,* [92 Colo. 433,] 21 P.2d 709, 710 (Colo.1933); *Donaldson [,Hoffman & Goldstein] v. Gaudio [ (In re Forrest A. Heath Co.) ],* 260 F.2d 333, 335–36 (10th Cir.1958). A retaining lien permits the attorney to retain possession of personal property of the client, such as a deposit or files, until fees are paid. A charging lien permits the attorney to satisfy his fee claim out of the subject matter of the litigation.

Even without filing notice, Bittman had a charging lien on the chose in action that produced the settlement, because as between attorney and client, the lien arises by operation of law. *See Dankwardt v. Kermode,* [68 Colo. 225,] 187 P. 519, 520 (Colo.1920); *Dolan v. Flett,* [41 Colo.App. 40,] 582 P.2d 694, 696 (Colo. App.1978); *Ranes v. Molen [ (In re Ranes) ],* 31 Bankr. 70, 72 (Bankr.D.Colo. 1983). However, because Bittman did not file a notice of lien, it was not perfected against third parties [*see In re Ranes,* 31 Bankr. at 72; *Dolan,* 582 P.2d at 696,] and was therefore invalid against a trustee in bankruptcy as of the date of the bankruptcy filing under 11 U.S.C. § 545.

District Court Opinion and Order at 2–3. We agree with the district court to this point in its analysis.

In addition, the district court was correct that the trustee, or in this case the debtor-

in-possession,[4] had the power to avoid the $5,100 payments as preferences. This provision was intended as protection of the debtor, the trustee, and other creditors from those creditors aware of the unstable financial condition of the debtor immediately prior to its bankruptcy filing who "dismember the debtor during his slide into bankruptcy," H.R.Rep. No. 595, 95th Cong., 2d Sess., 177, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6138 (hereafter "House Report"), draining the debtor of resources which could be used for its restructuring or for equitable distribution among all the debtor's creditors. *Id.*

■ However, Congress also recognized that certain otherwise avoidable preferential payments actually ultimately benefited the debtor's estate and hence the other creditors, and it excepted these situations from the trustee's avoidance power.[5] In the case before us, Bittman claims that his agreement to continue working on the case in consideration for the preferential payments constituted new value to the debtor and is thus not subject to the trustee's avoidance power.

The district court agreed with Bittman. It found that EMP's payments to Bittman during the preference period constituted new value because they resulted in a gain of $42,000 to the estate and because Bittman "released" $5,100 of his charging lien as against EMP upon receipt of the payments. District Court Opinion and Order

claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees.... Such lien may be enforced by the proper civil action.

**4.** The debtor-in-possession has the power of a Chapter 11 trustee in aspects relevant to our discussion here. *See* 11 U.S.C. § 1107(a).

**5.** 11 U.S.C. § 547(c) provides:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange;

....

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor— (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

at 4. We agree with the district court that the Fluor litigation resulted in a net direct financial gain to the estate, and we agree that Bittman's charging lien as against his client EMP was released upon acceptance of the preferential payments. However, as set forth below, we disagree that these two factors satisfy the tests for new value under prior holdings of this and other circuits.

As a preliminary matter, Bittman claims that his promise to continue to represent EMP if it made periodic payments to decrease its antecedent debt was consideration sufficient to constitute new value. However, this circuit has held otherwise. "[T]he fact that [the creditor] may have promised to continue to do business with [the debtor] if it paid its bills is not new credit or new value to the estate." *Lowrey v. U.P.G., Inc. (In re Robinson Bros. Drilling, Inc.)*, 877 F.2d 32, 34 (10th Cir. 1989). We are prompted to extend this holding to legal representation for three reasons. First, were we to hold otherwise, nearly any preferential transfer for or on account of an antecedent debt in the circumstance of an ongoing attorney-client relationship would be insulated from recovery as a preference under section 547(c)(1). *See id.* Second, "the Bankruptcy Code's definition of the term 'new value' implies that the creditor must prove the specific valuation in 'money or money's worth in goods, services, or new credit.'" *Id.* (citing *Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Sys., Inc.)*, 861 F.2d 1555, [1559] (11th Cir.1988); 11 U.S.C. § 547(a)(2)). There is no evidence, nor can we hypothecate circumstances in an attorney-client relationship under which there could be evidence, that the $42,000 settlement which enriched the estate was directly attributable to Bittman's promise

to continue to work on the Fluor file from December 1986 until May 1987. And third, continuation of Bittman's legal representation on the Fluor matter may have been more efficient than securing other counsel, but in this respect, legal representation is indistinguishable from the efficiency of continuation of the types of business relationships explicitly covered by the *In re Robinson Drilling* decision.

In addition, Bittman claims that the new value requirement was satisfied because, with his acceptance of the payments during the preference period, his attorney's charging lien was decreased in like amount, thus constituting a release of security. However, Bittman's release of the charging lien during the preference period was a release only as to his client. It was not a release as to third parties, *cf. In re Ranes*, 31 B.R. at 72 (charging lien which is automatic as between attorney and client becomes enforceable against third parties if notice of the lien is filed with the court); *Dolan*, 582 P.2d at 696 (same), including EMP's other creditors and the trustee or debtor-in-possession. After EMP filed its petition in bankruptcy, the perspective of the court must necessarily change from analysis of the preferential payments' effect on Bittman's security interest in the settlement proceeds as to his client, now debtor-in-possession EMP, to the effect of the payments on the estate and on EMP's other creditors. *See* 11 U.S.C. 545;[6] House Report at 6138.

Finally, Bittman claims that since the estate was enriched by $42,000 at the time of the Fluor settlement, even if the transfers were preferences, they should not be avoided since they resulted in a net increase to the estate. However, this argument is merely a request that we utilize the old judicially-created "net result rule" un-

---

**6.** 11 U.S.C. § 545 provides in pertinent part:
The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
(1) first becomes effective against the debtor—
(A) when a case under this title concerning the debtor is commenced;

(2) is not perfected or enforceable at the time of the commencement of the case against

a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

der the 1898 Bankruptcy Act, which has been discredited under the 1978 Bankruptcy Code. *McClendon v. Cal–Wood Door (In re Wadsworth Bldg. Components, Inc.)*, 711 F.2d 122, 123–24 (9th Cir.1983) (legislative history of the 1978 Bankruptcy Code does not support application of the "net recovery rule" analysis to the 1978 Code). We agree with the holding in *McClendon.* The orderly, equitable, and predictable liquidation or reorganization of the debtor's estate anticipated by the 1978 Code would be undermined by this post-hoc analysis of the financial benefits of preferential payments to creditors.

The district court's conclusion that EMP's payments to Bittman during the preference period were exceptions to avoidance because they were consideration for new value was erroneous and must be REVERSED. The bankruptcy court's order of Aug. 11, 1988, granting summary judgment to EMP as debtor-in-possession on its complaint seeking avoidance of the $5,100 preference payment described herein is REINSTATED.