In re Clyde F. MOSES, Debtor.

Susan J. Manchester, Trustee,
Plaintiff—Appellee,

v.

First Bank & Trust Company,
Defendant—Appellant.

BAP No. WO–99–073.
Bankruptcy No. 98–18235.
Adversary No. 99–1001.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Dec. 26, 2000.

642

Kenneth L. Spears, Oklahoma City, OK, for Defendant–Appellant.

Susan Manchester, of Taylor & Manchester, Oklahoma City, OK, for Plaintiff–Appellee.

Before McFEELEY, Chief Judge, and CLARK and McNIFF [1], Bankruptcy Judges.

1. Honorable Peter J. McNiff, United States Bankruptcy Judge, United States Bankruptcy

OPINION

CLARK, Bankruptcy Judge.

First Bank & Trust Company of Perry, Oklahoma ("Bank") appeals an order and judgment of the United States Bankruptcy Court for the Western District of Oklahoma denying its motion for summary judgment and granting the summary judgment motion of the Chapter 7 trustee ("Trustee") in a preference action. For the reasons set forth below, the bankruptcy court is AFFIRMED.

## I. BACKGROUND

The facts in this case are uncontested. In 1997, the debtor borrowed money ("First Loan") from The Charles Machine Works, Inc., Employee Stock Ownership Plan and Trust ("Trust"). In August 1998, the debtor applied for a loan from the Bank, representing that he needed approximately $9,700 to repay a portion of the First Loan. He informed the Bank that upon payment of the First Loan, he would immediately obtain a new loan from the Trust to repay the Bank.

The Bank loaned the debtor the amount requested on an unsecured loan basis ("Bank Loan"), the transaction being memorialized by a promissory note dated August 18, 1998 ("Bank Note"). The Bank Note required the debtor to pay the principal amount, plus interest of 12.475% per annum, on September 17, 1998. The debtor was also required to pay the Bank a minimum finance charge if the Bank Loan was paid before September 17, 1998, and the minimum charge had not been earned by the Bank, and to pay a late fee if he failed to timely pay the Bank Loan.

The debtor used the Bank Loan proceeds as represented to pay the First Loan. He then borrowed $15,000 from the Trust ("Trust Loan"), secured by his retirement trust account, valued at approximately $66,000. When he applied for the

Trust Loan, the debtor represented to the Trust Loan officer that he would use the proceeds to consolidate his debts, including paying the Bank Loan. He requested that the Trust make a check payable to Pioneer Loans, one of his creditors, and that the balance of the $15,000 Trust Loan proceeds be made payable to him. Although he represented to the Trust Loan officer that he intended to use the proceeds to pay, *inter alia*, the Bank Loan, he did not request that the Trust issue a check payable to the Bank. The Trust Loan application was submitted by the Trust Loan officer to the trustees of the Trust for approval. The trustees approved the Trust Loan based on documentation prepared by the Trust Loan officer and the objective criteria used by the Trust for loan approval, and the Trust disbursed two checks totaling $15,000—one payable to Pioneer Loans and one payable to the debtor. The note signed by the debtor in conjunction with the Trust Loan ("Trust Note") did not require that he pay the Bank Loan.

Three days after obtaining the Trust Loan, the debtor paid the Bank Loan in full, plus interest ("Transfer"). The debtor used the remaining Trust Loan proceeds to repay money that he had borrowed from his family, and for living expenses and bankruptcy fees. On the same day that he made the Transfer, the debtor filed a Chapter 7 petition. The debtor claimed his retirement account to be exempt in the amount of approximately $11,000.

The Trustee timely filed a complaint against the Bank, seeking to avoid the Transfer pursuant to 11 U.S.C. § 547(b).[2] The Bank maintained that the Transfer was not avoidable because it was not a "transfer of an interest of the debtor in property" as required under § 547(b) inasmuch as the Trust Loan was earmarked

Court for the District of Wyoming, sitting by designation.

2. Unless otherwise stated, all future statutory references are to title 11 of the United States Code.

for the Bank, and its payment to the Bank did not diminish the estate. Alternatively, the Bank argued that the Transfer was a contemporaneous exchange for new value that was not avoidable by the Trustee under § 547(c)(1).[3] The parties filed cross motions for summary judgment.

The bankruptcy court granted the Trustee's motion for summary judgment and denied the Bank's motion, holding that the Transfer was avoidable under § 547(b). It first rejected the application of the earmarking doctrine, stating that the doctrine does not apply if an unsecured debt, such as the Bank Loan, is replaced with a secured debt, such as the Trust Loan. In addition, the bankruptcy court found that the earmarking doctrine was inapplicable because the debtor had complete and unrestricted control of the funds that he transferred to the Bank. The bankruptcy court refused to address the Bank's argument that the debtor's estate was not diminished because the Trust Loan was secured by the debtor's exempt retirement account, concluding that the Bank lacked standing to assert the debtor's exemption as a defense to the avoidance action. Finally, assuming that the Bank Loan was "new value," the bankruptcy court concluded that the Bank's § 547(c)(1) defense failed as a matter of law because the Transfer was not intended by the debtor and the Bank to be a contemporaneous exchange. Rather, the terms of the Bank Note showed that the intent and expectation of the debtor and the Bank was to create a short-term, unsecured debt.

The Bank timely appealed the bankruptcy court's final order and judgment, and the parties have consented to this Court's jurisdiction over the appeal. *See* 28 U.S.C. § 158(a)(1), (b) & (c); Fed. R. Bankr.P. 8001–8002; 10th Cir. BAP L.R. 8001–1.

## II. *DISCUSSION*

■ No one contests that summary judgment was appropriate in this case.

Rather, the Bank maintains that the bankruptcy court erred as a matter of law in refusing to apply the earmarking doctrine so as to find the absence of a "transfer of an interest of the debtor in property" as required under § 547(b). In addition, the Bank contends that the bankruptcy court erred in failing to find that the Transfer was a contemporaneous exchange for new value under § 547(c)(1). In light of the fact that no one contests the appropriateness of the summary judgment disposition, we review the legal issues raised by the Bank *de novo See Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *CCF, Inc. v. First Nat'l Bank & Trust Co. (In re Slamans),* 69 F.3d 468, 472 (10th Cir.1995); *Straight v. First Interstate Bank of Commerce (In re Straight),* 207 B.R. 217, 221–22 (10th Cir. BAP 1997). In so doing, we conclude that the bankruptcy court should be affirmed.

### A. *Section 547(b) and the Earmarking Doctrine*

Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any *transfer of an interest of the debtor in property*—

 (1) to or for the benefit of a creditor;

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

 (3) made while the debtor was insolvent;

 (4) made—

 (A) on or within 90 days before the date of the filing of the petition; or

 (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

---

**3.** The Bank also asserted a defense under § 547(c)(2), which the bankruptcy court rejected. The Bank has not contested this ruling on appeal and, therefore, it is not addressed herein.

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). The parties agree that, with the exception of the element here that the Transfer be a "transfer of an interest of the debtor in property," all elements of § 547(b) have been met.

■■■ The phrase "transfer of an interest of the debtor in property" in § 547(b) is not expressly defined by the Bankruptcy Code, but it is well-established that it is broadly defined, and guidance is to be drawn from the definition of "property of the estate" set forth in § 541(a). *Begier v. IRS*, 496 U.S. 53, 58–59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); *Bailey v. Hazen (In re Ogden)*, 243 B.R. 104, 112–13 (10th Cir. BAP 2000) (relying on *Payne v. Clarendon Nat'l Ins. (In re Sunset Sales, Inc.)*, 220 B.R. 1005, 1013 (10th Cir. BAP 1998), *aff'd* 195 F.3d 568 (10th Cir.1999)). The term "property of the estate" is defined, in relevant part, as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). *See generally United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (discussing the very broad scope of § 541(a)(1)). Thus, "the fundamental inquiry under § 547(b) will be whether the Debtor had a legal or equitable interest in the property [transferred] such that the transfer at issue diminished or depleted the Debtor's estate." *Ogden*, 243 B.R. at 113, *citing Sunset Sales*, 220 B.R. at 1013 (citing *Gill v. Winn (In re Perma Pac. Properties)*, 983 F.2d 964, 968 (10th Cir. 1992)); *accord* 5 *Collier on Bankruptcy* ¶ 547.03[2] (Lawrence P. King ed., 15th ed. rev.2000) [hereinafter *Collier* ].

■■■ The Transfer is a "transfer of an interest of the debtor in property" within the meaning of § 547(b). Upon execution of the Trust Note, the debtor had a legal and an equitable interest in the Trust Loan proceeds, and the Transfer to the Bank diminished the debtor's estate. On the debtor's petition date, the Trust Loan proceeds were no longer available to pay unsecured creditors because they had been used by the debtor for his personal needs or to pay antecedent debts of his choosing, including the Bank Loan.

The Bank has not argued that the Transfer involved property excluded from the estate under § 541(b) or limited from inclusion in the estate under § 541(d). *See Begier*, 496 U.S. at 59, 110 S.Ct. 2258. Rather, the Bank contends that § 547(b) has not been met because the Trust Loan was "earmarked" for it and, thus, it was not a "transfer of an interest of the debtor in property" under § 547(b). We disagree. For the reasons discussed below, we conclude that the earmarking doctrine does not replace the "transfer of an interest of the debtor in property" element of § 547(b), as defined above. Even if the earmarking doctrine does apply, its use is not appropriate in this case.

1. *The Earmarking Doctrine Should Not Be Extended Beyond Codebtor Cases*

■■■ "Earmarking" is a judicially-created doctrine said to apply when a new creditor pays a debtor's existing debt to an old creditor. This doctrine originally arose under the Bankruptcy Act in codebtor cases—the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor. *See, e.g., National Bank v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912); *Smyth v. Kaufman (In re J.B. Koplik & Co.)*, 114 F.2d 40, 42 (2d Cir. 1940); *First Nat'l Bank v. Phalen*, 62 F.2d 21 (7th Cir.1932); *see also Adams v.*

*Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1008 (9th Cir.2000) (discussing history of earmarking doctrine); *McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 565 (8th Cir.1988) (same); *Brown v. First Nat'l Bank*, 748 F.2d 490, 491 (8th Cir. 1984) (applying doctrine in codebtor situation) (citing cases); *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 834 (1st Cir. BAP 1999) (recognizing origins of earmarking doctrine); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 153 B.R. 417, 424–26 (Bankr. D.Vt.1993) (same); *Collier*, ¶ 547.03[2] at 547–21–23 (citing and discussing Bankruptcy Code cases applying earmarking doctrine in codebtor context). In such cases, courts reasoned that the codebtor's payment to the old creditor did not constitute a transfer of the debtor's property, and there was no diminution of the debtor's estate inasmuch as the amount available for unsecured creditors remained the same as before the transfer regardless of the debtor's control of the transferred funds. Courts also noted that earmarking was equitable because if the transfer were avoided, the codebtor would be subject to double liability.

The earmarking doctrine was eventually extended "to situations where the new creditor is not a guarantor but merely loans funds to the debtor for the purpose of enabling the debtor to pay the old creditor." *Bohlen*, 859 F.2d at 566 (citing *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir.1938)). This extension of the doctrine has been subject to attack. *See, e.g., Bohlen*, 859 F.2d at 566 (in dictum, the Eighth Circuit questions application); *Neponset River*, 231 B.R. at 835 (First Circuit BAP refuses to extend doctrine beyond codebtor situation); *Hovis v. Powers Constr. Co. (In re Hoffman Assocs., Inc.)*, 194 B.R. 943, 958 (Bankr.D.S.C.1995) (same); *Geremia v. Fordson Assocs. (In re International Club Enters., Inc.)*, 109 B.R. 562, 566–67 (Bankr.D.R.I.1990) (same); *Kelton Motors*, 153 B.R. at 426–27 (criticizing extension);

*McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Prods., Inc.)*, 99 B.R. 18, 21 (Bankr.C.D.Cal.1989) (refusing to extend doctrine beyond codebtor scenario); David Gray Carlson and William H. Widen, *The Earmarking Defense to Voidable Preference Liability: A Reconceptualization*, 73 Am. Bankr.L.J. 591 (1999) [hereinafter *Carlson & Widen* ]; *see also Hansen v. MacDonald Meat Co. (In re Kemp Pacific Fisheries, Inc.)*, 16 F.3d 313, 316 n. 2 (9th Cir.1994) (recognizing dispute); *In re Smith*, 966 F.2d 1527 (7th Cir.1992) (without recognizing dispute, the court questions many general assumptions attached to earmarking). *But see Lucker v. Lewis Auto Glass, Inc. (In re Francis)*, 252 B.R. 143, 145–47 (Bankr.E.D.Ark.2000) (recognizing criticism, but applying doctrine); *Tolz v. Barnett Bank (In re Safe–T–Brake)*, 162 B.R. 359, 363–64 (Bankr. S.D.Fla.1993) (recognizing criticism, but holding that earmarking survives beyond codebtor cases); *Kelton Motors*, 153 B.R. at 427–28 (although critical of extension, court concludes that earmarking survived the Bankruptcy Act) (citing cases); *Official Bondholders' Comm. v. Eastern Utilities Assocs. (In re EUA Power Corp.)*, 147 B.R. 634, 640–43 (Bankr.D.N.H.1992) (holding that doctrine survives enactment of the Bankruptcy Code); *Steinberg v. NCNB Nat'l Bank (In re Grabill Corp.)*, 135 B.R. 101, 107–110 (Bankr.N.D.Ill.1991) (rejecting attack based on "ample support in the judicial gloss of the ... Code and former Bankruptcy Act."). For instance, in *Bohlen*, the Eighth Circuit commented that:

As a matter of first impression, it would seem that the doctrine should not have been so extended. The equities in favor of the guarantor or surety, the risk of his having to pay twice if the first payment is held to be a voidable preference, are not present where the new lender is not a guarantor himself. Yet the courts, without much detailed analysis of the differences, have routinely made the extension to non-guarantors.

Where there is no guarantor, the earmarking doctrine does not help either the new creditor or the debtor. In fact the new creditor is harmed. He is a general creditor whose recovery must come from a debtor's estate which is diminished to the extent that the payment made to the old creditor cannot be recovered as a preference. The only person aided by the doctrine is the old creditor, who had nothing to do with earmarking the funds, and who, in equity, deserves no such benefit. We can see no basis for preferring this old creditor to another who was paid with non-earmarked funds.

859 F.2d at 566, *quoted in Kelton Motors,* 153 B.R. at 427. The court in *International Club,* quoting and relying on the comments of the Eighth Circuit in *Bohlen,* held that:

> [E]xtension of the earmarking doctrine beyond the guarantor situation is both unwise and unwarranted, and would inevitably result in an inequitable treatment of creditors. Given this conclusion, we rule that the earmarking doctrine does not apply in this instance, where none of the money transferred to [the old creditor] was based on a guarantee or similar obligation.

859 F.2d at 567; *accord Neponset River,* 231 B.R. at 835; *Hoffman Assocs.,* 194 B.R. at 958.

We agree with the comments in *Bohlen* and the conclusion in *International Club, Neponset River,* and *Hoffman Assocs.* As pointed out in *Bohlen,* application of the earmarking doctrine in non-codebtor cases serves to *prefer* the old creditor, the creditor who was likely clamoring for payment. 859 F.2d at 566; *accord Smith,* 966 F.2d at 1535; *Kelton Motors,* 153 B.R. at 426. Such a preference is the essence of what

§ 547(b) was enacted to prevent. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 177–78 (1978), U.S.Code Cong. & Admin.News 5787, 5956–57, (§ 547(b) serves the "prime bankruptcy policy of equality of distribution among creditors" by ensuring that all creditors of the same class will receive the same *pro rata* share of the debtor's estate, and serves to prevent the dismemberment of the debtor); *accord Union Bank v. Wolas (In re ZZZZ Best Co.),* 502 U.S. 151, 160–61, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991); *Begier,* 496 U.S. at 58, 110 S.Ct. 2258; *Gillman v. Scientific Research Prods., Inc. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 554 (10th Cir. 1995); *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners),* 12 F.3d 1549, 1556 (10th Cir.1993), *cert. denied* 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994); *Johnson v. Barnhill (In re Antweil),* 931 F.2d 689, 692 (10th Cir.1991), *aff'd,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Research–Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.),* 917 F.2d 424, 428 (10th Cir.1990) (en banc); *Ogden,* 243 B.R. at 112.

Not only does the earmarking doctrine undermine the goals of § 547(b) but, more importantly, it is not provided for in § 547. A transfer is avoidable as a preference only if the trustee proves all of the elements of § 547(b), and the transferee-defendant is unable to prove any of the defenses set forth in § 547(c). *Mama D'Angelo,* 55 F.3d at 554; *ABB Vecto Gray, Inc. v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.),* 9 F.3d 871, 874 (10th Cir.1993); *Lowrey v. Manufacturers Hanover Leasing Corp. (In re Robinson Bros. Drilling, Inc.),* 6 F.3d 701, 703 (10th Cir. 1993); *see Union Bank,* 502 U.S. at 154, 112 S.Ct. 527; *see also* 11 U.S.C. § 547(g). Earmarking is not a stated defense under § 547(c).[4] Also, for the reasons set forth

---

4. In *Carlson & Widen,* the authors maintain that § 547(c)(1) codifies and, therefore, extinguishes the earmarking doctrine. Another author has stated that the earmarking doctrine is preempted by § 547(c)(4). Harry M.

Flechtner, *Preferences, Post–Petition Transfers, and Transactions Involving a Debtor's Downstream Affiliate,* 5 Bankr.Dev. J. 1, 17 & n. 57 (1987). While this may or may not be so, we

below, earmarking does not assist in defining the elements of a preference under § 547(b). It is merely a judicially-created exception to the requirements of § 547(b). *See Superior Stamp,* 223 F.3d at 1007–1008; *Smith,* 966 F.2d at 1535–36. We cannot recognize such exceptions over the express elements of § 547. *See Union Bank,* 502 U.S. at 155–56, 112 S.Ct. 527 (courts must give meaning to § 547(b) as enacted); *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (equitable powers of the bankruptcy court must be exercised within the confines of the Bankruptcy Code), *quoted in Meridith Hoffman Partners,* 12 F.3d at 1557; *id.* at 1556 (courts may not disregard the clear language of § 547(b)).

Many courts invoking the earmarking doctrine maintain, as the Bank has in this case, that the doctrine aids in the analysis of whether the transfer sought to be avoided is a "transfer of an interest of the debtor in property" as required under § 547(b). *See, e.g., Kaler v. Community First Nat'l Bank (In re Heitkamp),* 137 F.3d 1087, 1089 (8th Cir.1998); *Buckley v. Jeld–Wen, Inc. (Interior Wood Products Co.),* 986 F.2d 228, 231 (8th Cir.1993); *Bohlen,* 859 F.2d at 564–65; *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1355–56 (5th Cir.1986); *Kapela v. Newman,* 649 F.2d 887, 892 (1st Cir. 1981); *Official Comm. of Unsecured Creditors v. Pedersen & Houpt (In re Crystal Med. Prods., Inc.),* 240 B.R. 290, 296 (Bankr.N.D.Ill.1999); *Safe–T–Brake,* 162 B.R. at 363–65; *Kelton Motors,* 153 B.R. at 428; *EUA Power,* 147 B.R. at 640. They assume that funds lent to the debtor by the new creditor are not the debtor's property if the new creditor and the debtor intended them to be used to pay the old creditor, or if the debtor did not control the new funds.[5]

We cannot square that assumption with the broad definition of "transfer of an interest of the debtor in property" discussed above. The definition discussed therein is the only relevant analysis under § 547(b), and we may not resort to the judicially-created earmarking doctrine to narrow its broad scope. If a debtor receives funds from a new creditor to pay its existing debt, the debtor's interest in the funds must be analyzed under § 541, including any limitations thereunder, as for example, those set forth in § 541(b) and (d), and the limitation on § 541(a)(1) related to traceable property that the debtor holds in trust for another. *See Begier,* 496 U.S. at 59, 110 S.Ct. 2258 (transfer not avoidable where funds were held in trust for United States); *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged–Investments Assocs., Inc.),* 48 F.3d 470 (10th Cir.1995) (whether a transfer was of an interest of the debtor's property under § 547(b) was determined by reference to

---

rule that § 547(c) lists the only defenses available to a transferee of a preferential transfer.

**5.** In perhaps the best argument, the court in *EUA Power* states that the earmarking doctrine survived the enactment of the Bankruptcy Code because it was a long-standing doctrine which was not expressly rejected when the Code was enacted. 147 B.R. at 641. Yet, the opposite argument is also true—earmarking was a long-standing doctrine that was not expressly incorporated as a defense to a preference action. *See Union Bank,* 502 U.S. at 155–56, 112 S.Ct. 527 (where text of § 547 does not support a reading of the statute, burden for persuading the court that a special rule applies is exceptionally heavy); *see also Carlson & Widen* (arguing that earmarking was adopted under the Bankruptcy Code as

part of the contemporaneous exchange defense set forth in § 547(c)(1)).

The Court in *EUA Power* also states that the application of the earmarking doctrine is appropriate to define the ambiguous phrase "transfer of a interest of the debtor in property." 147 B.R. at 641. Yet, in light of the decision in *Begier,* we do not believe that the phrase is as ambiguous as stated in *EUA Power. Begier* instructs that the phrase is to be interpreted within the confines of § 541, and this Court has adopted that interpretation. *See* discussion above. Thus, a debtor's interest in money lent to it by a new creditor to pay a debt of an old creditor must be examined with the context of § 541, not the judicially-created earmarking doctrine.

§ 541 and whether property claimed to be held in trust was traceable).

Generally, a new creditor's unconditioned promise to loan a debtor money to pay the debtor's antecedent debt is property in which the debtor holds an interest, as are the proceeds of the loan once it is made. *Superior Stamp,* 223 F.3d at 1007 (recognizing defendant's concession that "generally, transfers by a debtor of borrowed funds constitute transfers of the debtor's property because the borrowed funds, had they not been transferred, would have been available in bankruptcy to satisfy the claims of other creditors.") (citing *Kemp,* 16 F.3d at 316); *Smith,* 966 F.2d at 1533 (recognizing this point, but applying earmarking doctrine); *Ludford Fruit,* 99 B.R. at 21 ("Common sense is stretched to the breaking point when a court finds that funds loaned to a debtor, even for the specified purpose of paying an existing creditor, do not become property of the debtor."); *Carlson & Widen* at 593–603 (questioning how property received by the debtor and transferred to an old creditor is not considered property of the debtor); Harry M. Flechtner, *Preferences, Post–Petition Transfers, and Transactions Involving a Debtor's Downstream Affiliate,* 5 Bankr.Dev. J. 1, 14–15 & 16 n. 55 (1987) ("the oft-repeated assertion that earmarking prevents the transferred property from becoming property of the debtor represents a misguided attempt to create a statutory basis for the judge-made earmarking doctrine, and should be rejected."); *see also Collier,* ¶ 541.11 at 541–59 ("where the recipient of the funds can by agreement use them as the recipient's own and commingle them with the recipient's own monies, a debtor-creditor relationship exists, not a trust [which may be excluded from property of the estate]."). Whether the debtor directs that the asset be paid to it or to a particular creditor to whom it owes a debt does not alter the fact that the debtor is transferring property in which it holds an interest within the meaning of § 547(b).

Simply, the Transfer diminished the debtor's estate because the Trust Loan proceeds that would have been available to a pool of creditors were paid to one creditor—the Bank. *See Neponset River,* 231 B.R. at 835 (recognizing that if the debtor had not made the transfer at issue, the funds would have been an asset of the debtor's estate and available for distribution); *see also Perma Pac.,* 983 F.2d at 968 (Tenth Circuit recognizing that a transfer that depletes the estate of an asset that would otherwise have been available for distribution to all creditors is "precisely the situation that § 547 seeks to prevent"). While the debtor's liabilities may not have changed (this *status quo* being the focus of the earmarking doctrine), its assets have— and the change in the status of the debtor's assets is the appropriate focus of the "transfer of an interest of the debtor in property" analysis under § 547(b). *See Begier,* 496 U.S. at 58, 110 S.Ct. 2258; *Carlson & Widen* at 592–607.

2. *The Transfer was Not Earmarked for the Bank*

■ Even if the earmarking doctrine extends to non-codebtor cases, the bankruptcy court must be affirmed because the elements of earmarking have not been met in this case.

There are three tests used to determine if funds are earmarked. One line of cases focuses on whether the new creditor and the debtor intended the funds to satisfy the claim of the transferee. Under this "intent" test, the following elements must be satisfied:

(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,

(2) performance of that agreement according to its terms, and

(3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

**650**

*Bohlen,* 859 F.2d at 566 (footnote omitted); *accord, e.g., Heitkamp,* 137 F.3d at 1089; *Reigle v. Mahajan (In re Kumar Bavishi & Assocs.),* 906 F.2d 942, 944 (3rd Cir. 1990); *Francis,* 252 B.R. at 146–47; *see also Interior Wood Products,* 986 F.2d at 231–32.

A second line of cases applies the earmarking doctrine if the debtor lacked control over the funds supplied by the new creditor. In determining control, courts typically consider whether the new creditor restricted the use of the funds, whether the debtor had physical control over the funds, and whether the debtor had the ability to direct to whom the funds should be paid. *See, e.g., Superior Stamp,* 223 F.3d at 1008–1009;[6] *Kemp Pac. Fisheries,* 16 F.3d at 316–17; *McLemore v. Third Nat'l Bank (In re Montgomery),* 983 F.2d 1389 (6th Cir.1993); *Smith,* 966 F.2d at 1533; *Bohlen,* 859 F.2d at 566; *Coral Petroleum,* 797 F.2d at 1359; *Vieira v. Anna Nat'l Bank (In re Messamore),* 250 B.R. 913, 916–17 (Bankr.S.D.Ill.2000).

The third line of cases applies a "diminution of the estate" test. *See, e.g., Safe–T–Brake,* 162 B.R. at 366 & n. 3; *Kelton Motors,* 153 B.R. at 428. This self-explanatory test determines if the estate was diminished by the transfer.

None of these tests have been satisfied in this case. As discussed above, the debtor's estate was diminished by the Transfer. As a result, neither the intent test nor the diminution of the estate test are met.

Furthermore, the intent test relied on by the Bank cannot be satisfied because there was no agreement between the debt-

or and the Trust regarding the use of the Trust Loan proceeds. The debtor informed the Trust Loan officer, who processed the loan application but did not actually approve it, that he intended to use the proceeds therefrom to pay the Bank Loan. The loan application presented to the trustees of the Trust for approval indicated that the debtor sought the Trust Loan for debt consolidation, but there is nothing in the record showing that the trustees of the Trust, who actually approved the Trust Loan, approved it on that basis. The Trust Note does not require the debtor to pay a portion of the Trust Loan to the Bank, and as the Trust Loan officer testified at a deposition, the debtor was free to do with the money as he wished.[7] These uncontested facts make clear that earmarking does not apply here as a matter of law.

Finally, the uncontested facts establish that the control test cannot be met. Although the debtor orally represented to the Trust Loan officer that he intended to repay the Bank Loan with the Trust Loan proceeds, the Trust Note in no way required him to do so, and it was not conditioned on payment of the Bank Loan. Upon receipt, the debtor totally controlled the proceeds of the Trust Loan, and, as testified by the Trust Loan officer, he could have done with them what he wished. Even if, as argued by the Bank, the debtor's representations to the Trust Loan officer in some way legally required him to pay the Trust Loan proceeds to the Bank, he nevertheless controlled the proceeds because he, not the Trust, determined and designated to whom the pro-

**6.** In *Superior Stamp,* the Ninth Circuit considered the three-part intent test cited above to be the test to determine whether the debtor controls the funds. We need not address whether this is the correct approach because as discussed below, the control test is not met whether it is analyzed under the three-part test or under other factors typically used to determine control.

**7.** The Bank relies heavily on *Maggio v. Manufacturers Hanover Trust Co. (In re Oliver's*

*Stores, Inc.),* 112 B.R. 671 (Bankr.D.N.J. 1989), *aff'd,* No. CIV. A 90–381, 1990 WL 102353 (D.N.J. June 6, 1990). *Oliver's Stores* is clearly distinguishable. In that case, unlike the case at hand, the parties stipulated that the new creditor approved its loan to the debtor "based on an express understanding that the proceeds would be utilized to reduce a line of credit with [the old creditor]." *Id.* at 675. Here, no such stipulation exists.

ceeds would be paid. *See Kemp Pac. Fisheries,* 16 F.3d at 316 (citing additional cases); *Smith,* 966 F.2d at 1533–34; *Montgomery,* 983 F.2d at 1395; *Smyth,* 114 F.2d at 42; *Safe–T–Brake,* 162 B.R. at 365; *Collier,* at ¶ 547.03[2]. *But see Superior Stamp,* 223 F.3d at 1009.

■ We also note that if the earmarking doctrine were viable, its application in this case would not be appropriate as a matter of law because it never applies in situations where an unsecured debt, such as the Bank Loan, is replaced by a secured debt, such as the Trust Loan. *See, e.g., Superior Stamp,* 223 F.3d at 1008 n. 3; *Heitkamp,* 137 F.3d at 1089 (citing *Brown v. Mountain Prospect State Bank (In re Muncrief),* 900 F.2d 1220, 1224 n. 4 (8th Cir.1990)); *Mandross v. Peoples Banking Co. (In re Hartley),* 825 F.2d 1067 (6th Cir.1987); *Estate of Love v. First Interstate Bank (In re Love),* 155 B.R. 225 (Bankr.D.Mont.1993); *Kelton Motors,* 153 B.R. at 426 (citing cases); *see also Dean v. Davis,* 242 U.S. 438, 445–46, 37 S.Ct. 130, 61 L.Ed. 419 (1917) (the Court in dictum states that a transfer to an unsecured creditor from funds obtained from a new, secured creditor is a preference). The Bank argues that the application of this well-established rule is complicated in this case because the Trust Loan is secured by the debtor's exempt retirement account. Thus, although the Trust Loan is secured, it is secured by assets that are not available to general unsecured creditors. Viewed in this way, it is arguable that the Transfer did not diminish the estate, but rather enhanced it as the pool of unsecured debts was reduced by the payment of the Bank Loan. While the Trust Loan increased secured debt, thus potentially reducing unencumbered assets for unsecured creditors, the retirement account, which was collateral for the Trust Loan and is exempt, is not available to unse-

cured creditors. Unsecured debt, therefore, is less, with assets available for liquidation remaining the same.

Even if the Bank could rely on the debtor's exemption as a defense to the trustee's preference action,[8] its analysis fails because the record submitted by the Bank shows that the Trust Loan is fully secured by nonexempt assets. In particular, the $15,000 Trust Loan is secured by the debtor's retirement account, which had an approximate value of $66,000 several days prior to the debtor's petition date. Of that $66,000, the debtor only claimed approximately $11,000 exempt. Thus, the Trust is fully secured by the debtor's nonexempt assets as it may hold approximately $55,000 of the retirement account liable for the payment of its claim. Because the Trust Loan is secured, its replacement of the unsecured Bank Loan precludes application of the earmarking doctrine as a matter of law.

In conclusion, when determining whether a transfer is avoidable under § 547, the earmarking doctrine should not be extended beyond codebtor cases. Where a new creditor lends money to the debtor to pay an existing debt, the proper analysis is whether the debtor's transfer to the old creditor is a "transfer of an interest of the debtor in property" as that phrase has been defined by this Court and, if so, whether one of the § 547(c) defenses applies. Even if earmarking applies, the bankruptcy court did not err in refusing to apply it in this case. As such, the Transfer is avoidable under § 547(b), unless the bankruptcy court erred in failing to enter judgment in favor of the Bank under § 547(c)(1). For the reason stated below, the bankruptcy court did not err.

## B. *Section 547(c)(1)*

Section 547(c)(1) states:

> even if the Bank has standing to assert the debtor's exemption as a defense, its argument fails.

---

**8.** The bankruptcy court held that the Bank lacked standing to assert the debtor's exemption in defense to a preference attack. We need not, however, address this issue because

(c) The trustee may not avoid under a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1). "New value" is defined as—

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the ... trustee under any applicable law ... but does not include an obligation substituted for an existing obligation.

*Id.* § 547(a)(2).

■ In analyzing the application of § 547(c)(1) to this case, we must first ask whether "new value" was extended and, if so, by whom. In the typical § 547(c)(1) case, new value is provided by the creditor who received the transfer from the debtor—the debtor transfers property to the creditor, and the creditor provides new value to the debtor. Here, however, the Bank-transferee did not provide new value to the debtor. Specifically, the debtor did not make the Transfer to the Bank in exchange for "money or money's worth in goods, services, or new credit, or release by [the Bank] of property previously transferred ...." *Id.* The only exchange that took place upon the Transfer was the satisfaction of the Bank Loan, and the mere satisfaction of an antecedent debt is not "new value" under § 547(a)(2). *Langenkamp v. Hackler (In re Republic Trust & Savs. Co.),* 897 F.2d 1041, 1043–44 (10th Cir.), *rev'd on other grounds, Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); *Collier,* ¶ 547.02[2] at 547–13 ("new value" is "obviously" not the "satisfaction of an antecedent debt").

■ Despite the Bank's failure to provide new value, the Transfer may be insulated under § 547(c)(1) if new value was provided by a third party, such as the Trust. There is nothing in § 541(c)(1) requiring the transferee-creditor to provide new value. *See Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.),* 837 F.2d 224, 228–29 (5th Cir.1988); *Gray v. Chace (In re Boston Publishing Co.),* 209 B.R. 157, 174 (Bankr.D.Mass.1997); *Carlson & Widen* at 618–20; *see also In re Powerine Oil Co.,* 59 F.3d 969, 972–74 (9th Cir.1995). It states that the transfer must be "a contemporaneous exchange for new value given to the debtor...." 11 U.S.C. § 547(c)(1); *cf. id.* § 547(c)(4) (expressly requiring the transferee-creditor to provide new value). Thus, we may consider the Trust Loan to be "new value" for purposes of § 547(c)(1).

■ When the Trust Loan is deemed to be the "new value" for the Transfer, however, it is clear that § 547(c)(1) cannot be met as a matter of law. Section 547(c)(1) protects transfers that do not result in a diminution of the estate—unsecured creditors are not harmed by the targeted transfer if the estate was replenished by an infusion of assets that are of roughly equal value to those that were transferred. *See, e.g., Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.),* 916 F.2d 1502, 1505 (10th Cir.1990); *Lowrey v. U.P.G., Inc. (In re Robinson Bros. Drilling, Inc.),* 877 F.2d 32, 33–34 (10th Cir.1989). Here, the estate was not replenished because the Trust Loan is secured. Thus, in addition to the Transfer to the Bank, the debtor made an additional transfer of security to the Trust upon execution of the Trust Note. Although the estate was enhanced by the debtor's receipt of new value (the Trust Loan proceeds), it was simultaneously diminished by *both* the Transfer (the payment of the Bank Loan) and the granting of the security interest to the Trust. The Trust Loan-new value cannot be attributed to both transfers. As such, the

bankruptcy court did not err in granting judgment for the Trustee.

 Finally, even if the Trust Loan could be viewed as new value attributable to the Transfer, the bankruptcy court did not err in determining that the debtor and the Bank did not intend the Transfer to be a contemporaneous exchange for the Trust Loan as required under § 547(c)(1)(A). As determined by the bankruptcy court, although there is evidence that the debtor and the Bank discussed the fact that the Trust Loan would be used to pay the Bank Loan, the Bank Note makes clear that the debtor and the Bank intended to create a short-term debt. Indeed, the Bank Note has a one-month maturity date, provides for payment of principal and interest, and also has pre-payment provisions. These terms, more than the debtor and the Bank's conversations during the application process, disprove that the debtor and the Bank intended that the Transfer and the Trust Loan be a contemporaneous exchange.

## III. *CONCLUSION*

For the reasons stated above, the bankruptcy court's order and judgment are AFFIRMED.