**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

In the Matter of:  ERIC THEODORE
WAGENKNECHT; SUSAN ELIZABETH
COLBERT,

    Debtors.

------------------------------

JARED WALTERS, Trustee,

    Plaintiff - Appellee,

v.

STEVENS, LITTMAN, BIDDISON,
THARP & WEINBERG, LLC,

    Defendant - Appellant.

No. 19-1206

_____

**Appeal from the United States Bankruptcy Appellate Panel**

**(BAP No. 18-093-CO)**
_____

Craig A. Weinberg, Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Boulder,
Colorado, for Defendant-Appellant.

David V. Wadsworth, Wadsworth Garber Warner Conrardy, P.C., Littleton, Colorado, for
Plaintiff-Appellee.
_____

Before **BRISCOE**, **EBEL**, and **LUCERO**, Circuit Judges.
_____

**EBEL**, Circuit Judge.

_____

The Chapter 7 bankruptcy trustee administering the estates of Eric

Wagenknecht and his wife initiated this 11 U.S.C. § 547 preference action against the

law firm of Stevens, Littman, Biddison, Tharp & Weinberg, LLC (the "Law Firm").

The bankruptcy court entered summary judgment in favor of the Trustee, and the

Bankruptcy Appellate Panel for the Tenth Circuit ("BAP") affirmed.  The Law Firm

now appeals.  Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we reverse.

## I.    BACKGROUND

Eric Wagenknecht and his wife, Susan Colbert, filed for relief under Chapter

13 of the Bankruptcy Code on January 19, 2016[1] (the "Petition Date").  The case was

converted to Chapter 7 on April 28, 2017.  Jared Walters was appointed as the

Chapter 7 trustee for the estate (the "Trustee").

Prior to the Petition Date, the Law Firm provided legal services to Eric.  By

the end of 2015, Eric owed the Law Firm over $20,000.  In January 2016, Eric asked

his mother, Sharon Wagenknecht, if he could borrow $21,672.65 to pay the Law

Firm.[2]  Sharon agreed to loan Eric the money for the sole purpose of paying the Law

---

[1] There is some confusion about whether Eric and Susan filed for relief on January 19 or January 29, 2016.  In its briefing, the Law Firm indicates that the debtors filed for relief on January 29, 2019.  In the Complaint, however, the Trustee alleged that the debtors filed for relief on January 19, 2016, and the Law Firm admitted that allegation in its Answer.  The filing is not in the record before us.  We refer to the earlier date, January 19, 2016, but the discrepancy does not affect our analysis.

[2] We draw some of the recited facts from an affidavit submitted by Sharon.  The Trustee successfully argued to the bankruptcy court that the affidavit constitutes parol evidence that should not be considered.  The BAP reversed the bankruptcy court's

2

Firm. On January 11, 2016, Eric executed a promissory note to repay Sharon. The note does not place any conditions on the loan, but Sharon stated in an affidavit that she "required . . . as a condition of the loan, that the entire $21,672.65 be used exclusively to pay the specific debt owed to the Law Firm and for no other purpose." (App. 17.) Sharon further stated that she "would not have made [the] loan unless the funds were used exclusively to pay the Law Firm." (Id.) On January 14, 2016, Sharon wrote a check, drawn on her bank account, directly to the Law Firm in the amount of $21,672.65, and delivered the check directly to the Law Firm. The Law Firm cashed the check on January 15, 2016.

In January 2018, the Trustee initiated an adversary proceeding against the Law Firm. The Trustee alleged that the payment to the Law Firm was a preferential transfer under 11 U.S.C. § 547. The Trustee therefore sought to avoid and recover the payment under 11 U.S.C. §§ 547 and 550.

The parties cross-moved for summary judgment, and the bankruptcy court entered an order denying the Law Firm's motion for summary judgment and granting the Trustee's cross-motion for summary judgment.

## II. STANDARD OF REVIEW

"Although this is an appeal from a BAP decision . . . 'we review only the [b]ankruptcy [c]ourt's decision.'" Rebein v. Cornerstone Creek Partners, LLC (In re

---

exclusion of the affidavit and considered the facts detailed therein. The Trustee does not appeal this aspect of the BAP's decision. In its brief on appeal, the Trustee writes, "for purposes of review before the Tenth Circuit . . . the Trustee believes the [a]ffidavit may be considered." (Resp. Br. 1–2)

Expert S. Tulsa, LLC), 842 F.3d 1293, 1296 (10th Cir. 2016) (quoting Alderete v.

Educ. Credit Mgmt. Corp. (In re Alderete), 412 F.3d 1200, 1204 (10th Cir. 2005)).

"We treat the BAP as a subordinate appellate tribunal whose rulings may be

persuasive but are not entitled to deference." Id. We review the bankruptcy court's

summary judgment ruling de novo, "examining the evidence in the light most

favorable to the [nonmovant] to determine whether [the movant] established that

there was 'no genuine dispute as to any material fact' and it was 'entitled to judgment

as a matter of law.'" Jubber v. SMC Elec. Prods., Inc. (In re C.W. Mining Co.), 798

F.3d 983, 986 (10th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).

## III.   DISCUSSION

"One of the purposes of bankruptcy law is to provide fair remedies to

creditors generally, and a corollary of this principle is to prevent, within limits, a

debtor from giving preferred treatment to some creditors in derogation of the interests

of other, similarly situated creditors." Rupp v. United Sec. Bank (In re Kunz), 489

F.3d 1072, 1074–75 (10th Cir. 2007). The Bankruptcy Code has "long recognized

and addressed the concern that a debtor could circumvent this policy by making

preferential transfers before filing his bankruptcy petition." Id. at 1075. Section 547

of the Bankruptcy Code governs such preferential transfers. Under § 547(b), a

trustee is empowered to avoid a "transfer of an interest of the debtor in property"

under certain conditions.[3] 11 U.S.C. § 547(b).

---

[3] The preconditions require that the transfer be:

4

The parties agree that those conditions were met in this case. The only issue raised in this appeal is whether the payment to the Law Firm constituted a "transfer of an interest of the debtor in property" as a matter of law under § 547(b). The Bankruptcy Code does not define "an interest of the debtor in property." Parks v. FIA Card Servs., N.A. (In re Marshall), 550 F.3d 1251, 1255 (10th Cir. 2008). However, the Supreme Court has held that the phrase is "coextensive with property of the estate as defined in 11 U.S.C. § 541(a)(1)." Id. at 1255 n.2 (citing Begier v. IRS, 496 U.S. 53, 58–59 (1990)). "Section 541(a)(1) provides that the property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case' wherever located and by whomever held." Id. at 1255 (alteration in original). "The scope of § 541 is broad and should be generously construed; an interest may be property of the estate even if it is novel or

---

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) [one] that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of [title 11 of the United States Code];
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of [title 11 of the United States Code].

11 U.S.C. § 547(b).

contingent." Id. (alterations incorporated) (quoting Baer v. Jones (In re Montgomery), 224 F.3d 1193, 1194 (10th Cir. 2002)).

For most bankruptcy proceedings, "property interests are created and defined by state law." Id. (quoting Bailey v. Bog Sky Motors, Ltd. (In re Ogden), 314 F.3d 1190, 1197 (10th Cir. 2002)). "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate." Id.

In Marshall, we identified two tests to determine whether a debtor has "legal or equitable interests" in the transferred property: the "dominion/control" test and the "diminution of the estate" test. Id. at 1255. Under the dominion/control test, "a transfer of property will be a transfer of 'an interest of the debtor in property' if the debtor exercised dominion or control over the transferred property." Id. Under the diminution of the estate test, "a debtor's transfer of property constitutes a transfer of 'an interest of the debtor in property' if it deprives the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors." Id. at 1256.

In Marshall, the debtors directed one of their credit card lenders—Capitol One—to repay amounts they owed to a different credit card lender—MBNA—through a balance transfer. The debtors later filed a bankruptcy petition and the appointed trustee sought to avoid the transferred funds as a preferential transfer under § 547. Because applicable state law (Kansas) did not specifically address whether debtors retain a property interest in loan proceeds used to repay another lender, we

6

applied both the dominion/control test and the diminution of the estate test to determine whether the <u>Marshall</u> debtors had a legal or equitable interest in the loan proceeds. We concluded that, under both tests, the debtors had a sufficient interest in the property to support avoidance of the payment under § 547(b).

Under the dominion/control test, we concluded that "[t]he payments were a debtor's discretionary use of borrowed funds to pay another debt." <u>Id.</u> at 1257. Even though "the debtors never possessed a check or proceeds of a loan," the debtors exercised their discretion to draw on their Capital One line of credit, and they directed Capital One to pay MBNA. <u>Id.</u> at 1254. That "ability to direct [the] distribution" of the loan proceeds was evidence of the debtor's dominion or control over the proceeds. <u>Id.</u> at 1256. Under the diminution of the estate test, we concluded that, after the debtors exercised their discretion to draw on their Capitol One line of credit, the proceeds became "part of the estate" before they were transferred to MBNA. <u>Id.</u> at 1258 (quoting <u>Begier</u>, 496 U.S. at 58). Therefore, the transfer to MBNA "deprive[d] the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors." <u>Id.</u> at 1256.

Here, we have not identified any Colorado[4] authority addressing whether a debtor has an interest in loan proceeds used to directly pay a pre-existing creditor

---

[4] We need not decide whether federal or state choice-of-law rules apply in bankruptcy cases because Colorado law applies under any analysis. All relevant parties reside in Colorado and the payment to the Law Firm took place in Colorado. <u>See, e.g.</u>, <u>Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n</u>, 771 F.3d 1230, 1236 n.7 (10th Cir. 2014) ("In contract and tort, 'Colorado follows the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws.'" (quoting <u>ITT Specialty Risk</u>

7

under the conditions presented here, where the creditor exercised exclusive control over the disbursement of the loan proceeds and those proceeds never came under the control or authority or in the possession of the debtor, even for a nanosecond. We apply Marshall's dominion/control and diminution of the estate tests to determine whether Eric had a legal or equitable interest in the payment to the Law Firm. This case presents a different set of facts than those present in Marshall, and we conclude that neither the dominion/control test nor the diminution of the estate test is satisfied here.

First, Eric did not, and could not, exercise dominion or control over the funds used to pay the Law Firm because he did not have "an ability to direct their distribution." Id. In her sworn affidavit, Sharon indicated that she retained sole control over the disbursement of these funds when she stated that she agreed to loan Eric money "for the sole purpose of paying the Law Firm." (App. 17.) She further stated that she would not have made the loan for any other purpose; "the loan was not a general line of credit that [Eric] could have used however he wanted or desired." (Id.) Sharon offered to make the loan with the limited condition that the funds be used to pay the Law Firm, and Eric accepted that condition. That condition meant that Eric never controlled the funds because, as further stated by Sharon, Eric could not "direct how those proceeds were used, applied, or distributed." (Id.)

---

Servs. v. Avis Rent A Car Sys., Inc., 985 P.2d 43, 47 (Colo. App. 1998)); Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1069 (9th Cir. 2002) ("Federal choice of law rules follow the approach of the Restatement (Second) of Conflict of Laws.").

8

Second, the payment to the Law Firm did not diminish Eric's bankruptcy estate because the monies, in fact, never became part of the estate. In her affidavit, Sharon stated that she wrote a check in the amount of $21,672.65 directly to the Law Firm. The check was written on an account in her name, in which Eric held no interest. Sharon then delivered the check directly to the Law Firm; it never passed through Eric's estate at all. It is not as though Sharon wrote a check to Eric and instructed him to use the funds to pay the Law Firm. Rather, the funds were never deposited in any accounts in which Eric holds an interest, and Eric played no role in delivering the funds to the Law Firm. Thus, the evidence shows that the monies were never available "to satisfy the claims of creditors." In re Marshall, 550 F.3d at 1256. When the transferred property would not have been available to satisfy the claims of other creditors in a bankruptcy proceeding, "the policy behind the avoidance power is not implicated." Id. (quoting Begier, 496 U.S. at 58).

Because Eric did not exercise control or dominion over the payment to the Law Firm, and because the payment did not diminish Eric's bankruptcy estate, the payment did not constitute a "transfer of an interest of the debtor in property" under

9

§ 547(b).  Therefore, the bankruptcy court erred in entering summary judgment in favor of the Trustee.[56]

---

[5] Before the bankruptcy court, the Law Firm also argued that the earmarking doctrine bars the Trustee from recovering the payment to the Law Firm.  "The judicially-created earmarking doctrine was originally limited to codebtor cases, i.e., cases in which the lender who provides the funds to the debtor to pay off the creditor was also obligated to the creditor either as a guarantor or surety."  In re Marshall, 550 F.3d at 1257 n.5.  Courts have applied the earmarking doctrine to conclude that trustees may not avoid and recover such payments.  Some courts have extended the earmarking doctrine beyond the limited codebtor context, "to cases in which the lender was not a guarantor or surety but rather provided funds to the debtor for the purpose of paying a specific indebtedness."  Id.  The Tenth Circuit has not determined whether the earmarking doctrine applies outside of the codebtor context.  Id. (citing Manchester v. First Bank & Trust Co. (In re Moses), 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000)).  Because the Law Firm "elected not to challenge on appeal the applicability of the 'earmarking' defense," (Reply Br. at 6), that issue is not before us.

[6] The dissent raises two objections to our opinion.  Both are easily answered.  First, the dissent says that Sharon's funds paid directly to the law firm became an asset of the bankruptcy estate because Eric executed a Note in favor of Sharon.  But that Note is an obligation by Eric to pay Sharon money.  Nothing in the Note represents an asset of Eric's estate.  The Note was not signed by Sharon nor does it contain any obligation on the part of Sharon to pay any money to Eric's estate—or indeed to pay money to anyone.  To call Eric's obligation an asset ignores the language of the Note itself.

Second, the dissent objects to the earmarking doctrine, and particularly to its extension to a situation beyond when an earmarked payment was made by a guarantor or surety of a debt of the estate.  But, as our footnote 5 makes clear, the earmarking doctrine explicitly was not asserted in this case and emphatically was not the basis for the majority opinion.

The dissent cites the BAP's opinion in Moses, which in turn collects cases for the proposition that "[g]enerally, a new creditor's unconditioned promise to loan a debtor money to pay the debtor's antecedent debt is property in which the debtor holds an interest, as are the proceeds of the loan once it is made."  In re Moses, 256 B.R. at 649.  Those cases are inapposite, because they explicitly involved earmarked funds that were first given to the estate or passed through the estate.  In fact, that appears to be a critical fact in our opinion in Marshall, 550 F.3d at 1258 n. 6.  In contrast, in our case, Sharon's funds never passed through Eric's estate, even for a nanosecond, and were never under Eric's control.  Under our test in Marshall, they never became property of Eric's estate in the first place.  Thus, Sharon's payment could not be a preference of the payment of estate property as defined in §541(a)(1) and elaborated upon in Marshall.

## IV.    CONCLUSION

We REVERSE the order and judgment of the bankruptcy court and REMAND for further proceedings.

No. 19-1206, *Walters v. Stevens, Littman, Biddison*
**BRISCOE**, Circuit Judge, dissenting.

I respectfully dissent. In my view, the bankruptcy court was correct in treating the payment by Sharon Wagenknecht (Sharon) to defendant Stevens, Littman, Biddison, Tharp & Weinberg, LLC (the Law Firm) on behalf of her son, debtor Eric Wagenknecht (Eric), as a preferential transfer under 11 U.S.C. § 547. I therefore vote to affirm the bankruptcy court's grant of summary judgment in favor of the Trustee.

I

Section 547 of the Bankruptcy Code governs preferential transfers. In particular, § 547(b) authorizes the trustee "to avoid any transfer of an interest of the debtor in property":

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>> (A) on or within 90 days before the date of the filing of the petition; or
>>
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

I agree with the majority that "[t]he only issue raised in this appeal is whether the payment to the Law Firm constituted a 'transfer of an interest of the debtor in property' as a matter of law under § 547(b)." Maj. Op. at 5. I also agree with the majority that we must resolve this issue by applying the dominion/control and diminution of the estate tests that were adopted by this court in *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251 (10th Cir. 2008). I part ways with the majority, however, in the application of those tests.

### *The dominion/control test*

The majority concludes that "Eric did not, and could not, exercise dominion or control over the funds used to pay the Law Firm because he did not have an ability to direct their distribution." Maj. Op. at 8 (quotations omitted). In support of this conclusion, the majority points exclusively to statements made by Sharon in her affidavit. Specifically, the majority notes that Sharon stated in her affidavit that "she agreed to loan Eric money 'for the sole purpose of paying the Law Firm,'" "she would not have made the loan for any other purpose," and thus "'the loan was not a general line of credit that [Eric] could have used however he wanted or desired.'" *Id.* (quoting App. at 17). Based upon these statements, the majority concludes "that Eric never controlled the funds"

2

because he "could not 'direct how those proceeds were used, applied, or distributed.'" *Id.* (quoting App. at 17).

I disagree with the majority for two reasons. First, the majority's analysis, in my view, ignores the realities of the transaction that occurred between Eric and Sharon. It is undisputed that Eric asked Sharon for a loan in order to pay the debt he owed to the Law Firm, and that, after Sharon agreed to loan him the money, he knowingly executed a note in favor of Sharon. After doing so, and before Sharon transmitted the funds to the Law Firm, Eric's assets effectively increased in the amount of the loan proceeds, and his debts likewise effectively increased in the same amount, since Sharon had now become one of his creditors. *See In re Marshall*, 551 F.3d at 1258 n.6 ("The moment Capital One honored Debtors' draw on their line of credit those proceeds (the newly loaned funds) became an asset of Debtors' estate."). Three days after the note was executed, Sharon transmitted the loan proceeds directly to the Law Firm, thereby complying with Eric's direction to pay the debt owed by him to the Law Firm. That effectively reduced Eric's assets by the amount of the payment, but also simultaneously reduced his debts in the same amount. Although Eric did not personally transmit the loan proceeds to the Law Firm, he effectively and constructively did so through Sharon.[1] I therefore conclude that

_____

[1] As the Bankruptcy Appellate Panel (BAP) aptly noted in affirming the bankruptcy court's grant of summary judgment: "In this case, the Debtor's exercise of his ability to control the loan proceeds is evidenced by his execution of the Note in which he agreed to pay his mother for a loan, the proceeds of which were transferred directly to his

3

Eric exercised dominion or control over the loan proceeds, and that, consequently, the loan proceeds should be considered "an interest of the debtor in property" for purposes of § 547.

Second, by relying on the fact that Sharon purportedly loaned the funds to Eric for the sole purpose of paying off his debt to the Law Firm, the majority effectively, albeit implicitly, adopts the earmarking doctrine.[2] As I shall proceed to explain, I do not believe that the earmarking doctrine, even if adopted by this court, should be extended to situations other than those involving codebtors or guarantors.

In *In re Marshall*, we discussed, but ultimately found it unnecessary to adopt or reject, the earmarking doctrine. In doing so, we stated:

> The judicially-created earmarking doctrine was originally limited to codebtor cases, i.e., cases in which the lender who provides the funds to the debtor to pay off the creditor was also obligated to the creditor either as a guarantor or surety. *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000). In such cases, there were three rationales for why such payments were not voidable by the Trustee: (1) the lender's payment to the creditor did not constitute a transfer of the debtor's property; (2) no diminution of the debtor's estate occurred since the debtor's new obligation to the lender was equal to the amount the debtor had owed to the creditor; and (3) to prevent unfairness to the lender—if its payment to the creditor was avoided and the money was recaptured for the bankruptcy estate, the lender, as guarantor, would forfeit that money but

creditor. The Debtor could have refused to accept a loan from his mother if the proceeds were not distributed to him, but he did not do so." Aplt. App. at 107.

[2] To be sure, the majority states that the earmarking doctrine is not before us. Maj. Op. at 10 n.5. But, by hinging its analysis of the dominion/control test on the restrictions that Sharon purportedly placed on the use of the loan proceeds, the majority effectively adopts the earmarking doctrine.

4

remain obligated to the creditor. *Id.* at 646. Eventually this doctrine was extended to cases in which the lender was not a guarantor or surety but rather provided funds to the debtor for the purpose of paying a specific indebtedness. *Id.*

In *In re Moses*, the Tenth Circuit Bankruptcy Appellate Panel concluded the earmarking doctrine should not have been extended beyond the codebtor context. *Id.* at 651. We need not resolve the issue here because even if so extended, it does not apply in this case.

550 F.3d at 1257 n.5.

In *In re Moses*, the BAP offered a more complete history of the earmarking doctrine. And, as we noted in *In re Marshall*, the BAP ultimately concluded, albeit in dicta, that the doctrine should not be applied in situations where the new creditor, i.e., the person or entity making the new loan, was not already a guarantor or surety of the debtor:

"Earmarking" is a judicially-created doctrine said to apply when a new creditor pays a debtor's existing debt to an old creditor. This doctrine originally arose under the Bankruptcy Act in codebtor cases—the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor. *See*, *e.g., National Bank v. National Herkimer County Bank*, 225 U.S. 178, 32 S. Ct. 633, 56 L.Ed. 1042 (1912); *Smyth v. Kaufman (In re J.B. Koplik & Co.)*, 114 F.2d 40, 42 (2d Cir. 1940); *First Nat'l Bank v. Phalen*, 62 F.2d 21 (7th Cir. 1932); *see also Adams v. Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1008 (9th Cir. 2000) (discussing history of earmarking doctrine); *McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 565 (8th Cir. 1988) (same); *Brown v. First Nat'l Bank*, 748 F.2d 490, 491 (8th Cir. 1984) (applying doctrine in codebtor situation) (citing cases); *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 834 (1st Cir. BAP 1999) (recognizing origins of earmarking doctrine); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 153 B.R. 417, 424–26 (Bankr. D. Vt. 1993) (same); *Collier*, ¶ 547.03[2] at 547–21–23 (citing and discussing Bankruptcy Code cases applying earmarking doctrine in codebtor context). In such cases, courts reasoned that the codebtor's payment to the old creditor did not constitute a transfer of the debtor's property, and there was no diminution of the debtor's estate inasmuch as

5

the amount available for unsecured creditors remained the same as before the transfer regardless of the debtor's control of the transferred funds. Courts also noted that earmarking was equitable because if the transfer were avoided, the codebtor would be subject to double liability.

The earmarking doctrine was eventually extended "to situations where the new creditor is not a guarantor but merely loans funds to the debtor for the purpose of enabling the debtor to pay the old creditor." *Bohlen*, 859 F.2d at 566 (citing *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir. 1938)). This extension of the doctrine has been subject to attack. *See, e.g., Bohlen*, 859 F.2d at 566 (in dictum, the Eighth Circuit questions application); *Neponset River*, 231 B.R. at 835 (First Circuit BAP refuses to extend doctrine beyond codebtor situation); *Hovis v. Powers Constr. Co. (In re Hoffman Assocs., Inc.)*, 194 B.R. 943, 958 (Bankr. D.S.C. 1995) (same); *Geremia v. Fordson Assocs. (In re International Club Enters., Inc.)*, 109 B.R. 562, 566–67 (Bankr. D.R.I. 1990) (same); *Kelton Motors*, 153 B.R. at 426–27 (criticizing extension); *McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Prods., Inc.)*, 99 B.R. 18, 21 (Bankr. C.D. Cal. 1989) (refusing to extend doctrine beyond codebtor scenario); David Gray Carlson and William H. Widen, *The Earmarking Defense to Voidable Preference Liability: A Reconceptualization*, 73 Am. Bankr. L. J. 591 (1999) [hereinafter Carlson & Widen ]; *see also Hansen v. MacDonald Meat Co. (In re Kemp Pacific Fisheries, Inc.)*, 16 F.3d 313, 316 n. 2 (9th Cir. 1994) (recognizing dispute); *In re Smith*, 966 F.2d 1527 (7th Cir. 1992) (without recognizing dispute, the court questions many general assumptions attached to earmarking). *But see Lucker v. Lewis Auto Glass, Inc. (In re Francis)*, 252 B.R. 143, 145–47 (Bankr. E.D. Ark. 2000) (recognizing criticism, but applying doctrine); *Tolz v. Barnett Bank (In re Safe–T– Brake)*, 162 B.R. 359, 363–64 (Bankr. S.D. Fla. 1993) (recognizing criticism, but holding that earmarking survives beyond codebtor cases); *Kelton Motors*, 153 B.R. at 427–28 (although critical of extension, court concludes that earmarking survived the Bankruptcy Act) (citing cases); *Official Bondholders' Comm. v. Eastern Utilities Assocs. (In re EUA Power Corp.)*, 147 B.R. 634, 640–43 (Bankr. D.N.H.1992) (holding that doctrine survives enactment of the Bankruptcy Code); *Steinberg v. NCNB Nat'l Bank (In re Grabill Corp.)*, 135 B.R. 101, 107–110 (Bankr. N.D. Ill. 1991) (rejecting attack based on "ample support in the judicial gloss of the . . . Code and former Bankruptcy Act."). For instance, in *Bohlen*, the Eighth Circuit commented that:

As a matter of first impression, it would seem that the doctrine should not have been so extended. The equities in favor of the guarantor or surety, the risk of his having to pay twice if the first payment is held to be a voidable preference, are not present where the new lender is not a guarantor himself. Yet the courts, without much detailed analysis of the differences, have routinely made the extension to non-guarantors.

Where there is no guarantor, the earmarking doctrine does not help either the new creditor or the debtor. In fact the new creditor is harmed. He is a general creditor whose recovery must come from a debtor's estate which is diminished to the extent that the payment made to the old creditor cannot be recovered as a preference. The only person aided by the doctrine is the old creditor, who had nothing to do with earmarking the funds, and who, in equity, deserves no such benefit. We can see no basis for preferring this old creditor to another who was paid with non-earmarked funds.

859 F.2d at 566, quoted in *Kelton Motors*, 153 B.R. at 427. The court in *International Club*, quoting and relying on the comments of the Eighth Circuit in *Bohlen*, held that:

[E]xtension of the earmarking doctrine beyond the guarantor situation is both unwise and unwarranted, and would inevitably result in an inequitable treatment of creditors. Given this conclusion, we rule that the earmarking doctrine does not apply in this instance, where none of the money transferred to [the old creditor] was based on a guarantee or similar obligation.

859 F.2d at 567; *accord Neponset River*, 231 B.R. at 835; *Hoffman Assocs.*, 194 B.R. at 958.

We agree with the comments in *Bohlen* and the conclusion in *International Club*, *Neponset River*, and *Hoffman Assocs.* As pointed out in *Bohlen*, application of the earmarking doctrine in non-codebtor cases serves to prefer the old creditor, the creditor who was likely clamoring for payment. 859 F.2d at 566; *accord Smith*, 966 F.2d at 1535; *Kelton Motors*, 153 B.R. at 426. Such a preference is the essence of what § 547(b) was

7

enacted to prevent. *See* H. R. Rep. No. 595, 95th Cong., 2d Sess. 177–78 (1978), U.S. Code Cong. & Admin. News 5787, 5956–57, (§ 547(b) serves the "prime bankruptcy policy of equality of distribution among creditors" by ensuring that all creditors of the same class will receive the same pro rata share of the debtor's estate, and serves to prevent the dismemberment of the debtor); *accord Union Bank v. Wolas (In re ZZZZ Best Co.)*, 502 U.S. 151, 160–61, 112 S. Ct. 527, 116 L.Ed.2d 514 (1991); *Begier [v. I.R.S.]*, 496 U.S. [53,] 58, 110 S. Ct. 2258 [(1990)]; *Gillman v. Scientific Research Prods., Inc. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 554 (10th Cir. 1995); *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1556 (10th Cir. 1993), *cert. denied* 512 U.S. 1206, 114 S. Ct. 2677, 129 L.Ed.2d 812 (1994); *Johnson v. Barnhill (In re Antweil)*, 931 F.2d 689, 692 (10th Cir. 1991), *aff'd*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Research–Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.)*, 917 F.2d 424, 428 (10th Cir. 1990) (en banc); *Ogden*, 243 B.R. at 112.

Not only does the earmarking doctrine undermine the goals of § 547(b) but, more importantly, it is not provided for in § 547. A transfer is avoidable as a preference only if the trustee proves all of the elements of § 547(b), and the transferee-defendant is unable to prove any of the defenses set forth in § 547(c). *Mama D'Angelo*, 55 F.3d at 554; *ABB Vecto Gray, Inc. v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.)*, 9 F.3d 871, 874 (10th Cir.1993); *Lowrey v. Manufacturers Hanover Leasing Corp. (In re Robinson Bros. Drilling, Inc.)*, 6 F.3d 701, 703 (10th Cir. 1993); *see Union Bank*, 502 U.S. at 154, 112 S.Ct. 527; *see also* 11 U.S.C. § 547(g).

Earmarking is not a stated defense under § 547(c). Also, for the reasons set forth below, earmarking does not assist in defining the elements of a preference under § 547(b). It is merely a judicially-created exception to the requirements of § 547(b). *See Superior Stamp*, 223 F.3d at 1007–1008; *Smith*, 966 F.2d at 1535–36. We cannot recognize such exceptions over the express elements of § 547. *See Union Bank*, 502 U.S. at 155–56, 112 S.Ct. 527 (courts must give meaning to § 547(b) as enacted); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (equitable powers of the bankruptcy court must be exercised within the confines of the Bankruptcy Code), quoted in *Meridith Hoffman Partners*, 12 F.3d at 1557; *id.* at 1556 (courts may not disregard the clear language of § 547(b)).

Many courts invoking the earmarking doctrine maintain, as the Bank has in this case, that the doctrine aids in the analysis of whether the transfer sought to be avoided is a "transfer of an interest of the debtor in property" as required under § 547(b).  *See*, *e.g.*, *Kaler v. Community First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087, 1089 (8th Cir. 1998); *Buckley v. Jeld–Wen, Inc. (Interior Wood Products Co.)*, 986 F.2d 228, 231 (8th Cir. 1993); *Bohlen*, 859 F.2d at 564–65; *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1355–56 (5th Cir. 1986); *Kapela v. Newman*, 649 F.2d 887, 892 (1st Cir. 1981); *Official Comm. of Unsecured Creditors v. Pedersen & Houpt (In re Crystal Med. Prods., Inc.)*, 240 B.R. 290, 296 (Bankr. N.D. Ill. 1999); *Safe–T–Brake*, 162 B.R. at 363–65; *Kelton Motors*, 153 B.R. at 428; *EUA Power*, 147 B.R. at 640.  They assume that funds lent to the debtor by the new creditor are not the debtor's property if the new creditor and the debtor intended them to be used to pay the old creditor, or if the debtor did not control the new funds.

We cannot square that assumption with the broad definition of "transfer of an interest of the debtor in property" discussed above.  The definition discussed therein is the only relevant analysis under § 547(b), and we may not resort to the judicially-created earmarking doctrine to narrow its broad scope.  If a debtor receives funds from a new creditor to pay its existing debt, the debtor's interest in the funds must be analyzed under § 541, including any limitations thereunder, as for example, those set forth in § 541(b) and (d), and the limitation on § 541(a)(1) related to traceable property that the debtor holds in trust for another.  *See Begier*, 496 U.S. at 59, 110 S.Ct. 2258 (transfer not avoidable where funds were held in trust for United States); *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged–Investments Assocs., Inc.)*, 48 F.3d 470 (10th Cir. 1995) (whether a transfer was of an interest of the debtor's property under § 547(b) was determined by reference to § 541 and whether property claimed to be held in trust was traceable).

Generally, a new creditor's unconditioned promise to loan a debtor money to pay the debtor's antecedent debt is property in which the debtor holds an interest, as are the proceeds of the loan once it is made.  *Superior Stamp*, 223 F.3d at 1007 (recognizing defendant's concession that "generally, transfers by a debtor of borrowed funds constitute transfers of the debtor's property because the borrowed funds, had they not been transferred, would have been available in bankruptcy to satisfy the claims of other creditors.") (citing *Kemp*, 16 F.3d at 316); *Smith*, 966 F.2d at 1533 (recognizing this point, but applying earmarking doctrine); *Ludford Fruit*,

9

99 B.R. at 21 ("Common sense is stretched to the breaking point when a court finds that funds loaned to a debtor, even for the specified purpose of paying an existing creditor, do not become property of the debtor."); Carlson & Widen at 593–603 (questioning how property received by the debtor and transferred to an old creditor is not considered property of the debtor); Harry M. Flechtner, Preferences, Post–Petition Transfers, and Transactions Involving a Debtor's Downstream Affiliate, 5 Bankr. Dev. J. 1, 14–15 & 16 n. 55 (1987) ("the oft-repeated assertion that earmarking prevents the transferred property from becoming property of the debtor represents a misguided attempt to create a statutory basis for the judge-made earmarking doctrine, and should be rejected."); *see also* Collier, ¶ 541.11 at 541–59 ("where the recipient of the funds can by agreement use them as the recipient's own and commingle them with the recipient's own monies, a debtor-creditor relationship exists, not a trust [which may be excluded from property of the estate]."). Whether the debtor directs that the asset be paid to it or to a particular creditor to whom it owes a debt does not alter the fact that the debtor is transferring property in which it holds an interest within the meaning of § 547(b).

*Id.* at 645-49.

I find the BAP's analysis persuasive and would apply it to this case. Because Sharon was not a codebtor or guarantor of the debt owed by Eric to the Law Firm, I would hold that the earmarking doctrine is inapplicable and cannot serve to prevent the payment from Sharon to the Law Firm from being treated as a preferential transfer for purposes of § 547(b).

*The diminution of the estate test*

The majority also concludes that "the payment to the Law Firm did not diminish Eric's bankruptcy estate because the monies, in fact, never became part of the estate." Maj. Op. at 9. In support of its conclusion, the majority notes that Sharon wrote a check on her own account, in which Eric had no interest, and then delivered the check directly

10

to the Law Firm.  According to the majority, this meant that the monies borrowed by Eric from Sharon were never available to satisfy the claims of his creditors.  *Id.*

I again disagree.  In *In re Marshall*, we offered the following explanation of how the diminution of the estate test should be applied in situations where, as here, the debtor obtains a loan shortly prior to filing for bankruptcy:

> The net value of the [debtor's] estate did not change because the Capital One infusion of loan proceeds was totally offset by additional debt to Capital One.  But that is not the relevant test.  We must ask whether the loan proceeds "would have been part of the estate had [they] not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58, 110 S.Ct. 2258.  The Capital One loan proceeds were an asset of the estate for at least an instant before they were preferentially transferred to MBNA.  The preferential transfer look back is not time sensitive—the issue is whether any asset, regardless of how fleeting its presence in the bankrupt's estate during the relevant period of time, should be ratably apportioned among qualified creditors or permitted to benefit only a preferred creditor.  The answer is as clear as the statute itself—all preferential transfers of estate assets during the ninety-day look back are subject to recapture.

550 F.3d at 1258 (footnote omitted).

Applying that analytical framework to the facts before us leads inexorably to the conclusion that Sharon's payment of the loan proceeds to the Law Firm diminished Eric's estate.  As I discussed above, when Eric executed the note in favor of Sharon, the assets of his estate effectively increased by the amount of the loan and his liabilities

11

simultaneously increased by the same amount.[3] Or, in the words of *Marshall*, it was "essentially the same as if" Eric had "deposited the proceeds into an account within [his] control." *Id.* at 1256. Thus, had Eric filed for bankruptcy after executing the note but before the loan proceeds were transmitted by Sharon to the Law Firm, the bankruptcy estate would have included the value of those loan proceeds. Further, had that occurred, Sharon's purported limitations on the loan proceeds would have been meaningless; in other words, she could not have prevented the loan proceeds from being considered part of the estate. Finally, when the loan proceeds were transmitted by Sharon to the Law Firm, the estate was diminished in the amount of the loan proceeds. Thus, contrary to the majority's conclusion, the diminution of the estate test is satisfied in this case. As we noted in *Marshall*, "the issue is whether any asset, regardless of how fleeting its presence in the bankrupt's estate during the relevant period of time, should be ratably apportioned among qualified creditors or permitted to benefit only a preferred creditor." 550 F.3d at 1258.

## II

I vote to affirm the bankruptcy court's grant of summary judgment in favor of the Trustee.

---

[3] To be sure, "[t]he net value of the estate did not change because [Sharon's] infusion of loan proceeds was totally offset by additional debt to [Sharon]." 550 F.3d at 1258. But that is irrelevant because the loan proceeds became an asset of the estate. *Id.*

12